2007-3188 Gilmore v. USPS Mr. Williams, whenever you're ready. Yes, sir. Fair Business Court, I'm Ronnie Williams, here on behalf of Petitioner I. Gilmore. This is an employment case. It involves a long-term postal employee who was demoted from her position as a manager of a substation and moved out to a temporary flex position where she's moving mail sacks now. A 30-plus year employee. We contend that the decision by the agency was unlawful. That there was no basis for the decision at all. The way this demotion came about, the postal manager by the name of Barbara McClovey, who was on the same pay scale basically as Ms. Gilmore, they both were station managers. The next level of supervision, the MCSO position became available due to a vacancy. Ms. McClovey was appointed active MCSO of the Movement Postal Station. In that active capacity, she only could serve 120 days if she was a candidate for the permanent position. She was appointed in March of that year, 2004. Her appointment would have ended by operation of law in mid-July 2004. The proposed notice to remove Ms. Gilmore from her manager's position wasn't made until October 13th, three months after Ms. McClovey's temporary appointment as MCSO had terminated. Therefore, we contend that that decision made by Ms. McClovey was void. I thought the record showed that she had worked there from March of 2004 until September 13th, 2004. That's an error, Your Honor. I think if the administrative law judge's opinion is correct, she started in March. Her testimony was that she wasn't sure when it ended, but postal regulations established clearly that it ends 120 days. You can only have a temporary appointment for 120 days. You can get reappointed in an active capacity for an additional 120 days, but you cannot be reappointed if you are a candidate for the permanent position. The record is clear that Ms. McClovey was a candidate for the permanent position, so she could only have one 120-day appointment. But was she in that position until September 13, 2004 or not? No, she was not. Even in an acting capacity? She was not. When was she removed? Her appointment ended in mid-July. Now, I think what happened, and I guess I'll go back to what the administrative judge found in the situation, was basically a comedy of errors. There was one procedural problem after another in this whole process. Ms. McClovey still, I guess by all perceptions, tried to function as a manager supervising Ms. Gilmore. In fact, she had a meeting sometime early September, September 2, where she went over some concerns that she had about Ms. Gilmore's performance at her station. But at that time, Ms. McClovey was on the same level as Ms. Gilmore. She was no longer in that acting role. Now, the postmaster didn't pull her to the side and say, your appointment is over. But he was the one who made the appointment of Ms. McClovey in the acting role. He knew that he could not appoint her for an additional term due to her pending application for the permanent slot. She did not get the permanent slot. Another individual received the MCSO position, and that individual was in place at the time of the proposed notice of demotion. There was no reason for two MCSOs, in fact, there's no provision for two on site at that postal facility. Basically, Ms. McClovey was acting improperly and illegally. And I guess the postmaster was following up on what you just asked, Your Honor. The postmaster was allowing it to go on. You have a duly appointed MCSO now in place at that facility, but yet Ms. McClovey is still being allowed to act as if she still is carrying that title. But where is the reversible legal error that's been committed by the board in this particular situation? Well, the board didn't really even address that issue. The administrative judge did. Is that reversible error because it did not address that? Well, the reversible error, Your Honor, I think, is that that is illegal. The board cannot sustain an agency's action if that agency's action is not supported by law. And this certainly is not supported by law. You cannot have someone making a decision of that nature, demotion, termination, or anything along those lines, when they don't have the authority to do so. She did not have the authority to make that decision, and for the board to sustain that action by the agency is reversible error. But apart from that point, you're also contending that there were procedural errors in the course of the proceeding, right? Yes. And what exactly were the procedural errors? Well, back to Ms. Corvey. When she met in September with Ms. Gilmour and a union representative, as I said, she went over some concerns she had, and the meeting concluded with Ms. Corvey's statement that she will get the written materials to Ms. Gilmour or to the individual. I'm not following this. I thought, first of all, that there was an alleged error with respect to the specificity of the charges, right? Yes. But they didn't give sufficient notice. That's true, Your Honor. That's what we're talking about. She was supposed to have given these materials to her that supports. At the time of the meeting, there were no 10 specifications at all. She didn't even have them developed. Ms. Corvey did not. It was only later, at the time of the notice, the proposed notice being given, is when she first gave her the 10 specifications. But I thought you were saying that the 10 specifications weren't sufficiently detailed for her to make a response. We are saying that as well, Your Honor. But that's what I'm trying to focus on, is the procedural errors here that you say occurred in the course of the proceeding, right? Yes, sir. And so one of them is that the charges weren't sufficiently detailed. That's correct. Right? That's correct, Your Honor. And so what other errors were there? Aside from that, she was supposed to have an opportunity to respond to those charges. They were not detailed, which hampered her effort to respond to them. But even the notice to her did not sufficiently advise her of what her response rights were. They told her she could either respond orally or in writing. And really, in truth, she had the right to do both. She could respond orally and in writing if she sought to do so. It also gave her a certain amount of time to respond. She went through mediation during the pendency of this administration. And the administrative law judge here found that the time was not in compliance with the requirements of the regulations, right? Yes, that's correct. When she received the notice, she was told she had 10 days to request a conference with the postmaster and to give her side of the story, so to speak. Four days after she received that notice, the postmaster is already taking punitive action against her and is already basically carrying out the demotion of Ms. Gilmore. She did not have the full time period given to her or told to her that she would have. That was one of the other procedural violations. But she also never received any materials supporting the so-called 10 specifications of the allegations of nonperformance or poor performance of her responsibility. But she stipulated the 5 of the 10 and partially stipulated the 1, right? Yes, that's correct. So as far as those stipulated specifications are concerned, are they off the tables? Are they still being discussed as being procedurally erroneous? Well, I think we dealt with those during the trial of the case. What we were trying to show to the court was that there was a series of missteps by the agency. That was one of them. And yes, even though they did not provide her proper materials to defend herself or give her proper details as to what those allegations were, yes, she was still able to glean some idea of what some of those charges were about. And yes, she did stipulate to some of those charges. Did she ever ask, did she ever say, I haven't gotten some of the stuff, could you please furnish it to me? No, when the September meeting I was speaking of earlier ended, Ms. McCorvey had not even prepared the 10 specifications. So it's not like I haven't prepared, just call me and I'll get them to you. She told the representative and Ms. Gilmore at the conclusion of the meeting that she would get the materials to the union representative. That never happened. And the first time she got the 10 specifications was in the notice of proposed removal, October 13th. It was at that time that she received the notice. But from the September 2nd meeting conference with Ms. McCorvey to the October 13th removal time period, no materials were given to her. In fact, my understanding, there was no additional contact between the two at all. But no, she did not receive it. And no, she did not contact her and say, I did not get those materials. Where are they or anything of that nature? I think she called the union representative and asked, have you received those materials? And it was indicated to her that she had not received them either. But no, I don't think she ever got back with Ms. McCorvey. But with respect to the five, there was sufficient information in them for her to make a determination so that she could stipulate to those? Well, I think she made an attempt to. Yes, sir. I think the answer there is yes. The question there, though, is whether or not those five were sufficient enough to justify removal from that position. That's a separate issue. Yes, sir. But this whole thing hinges upon, I think, not just the specification. They're very important as well. But we think that she should never have been in that position in the first place. That's our primary argument. Ms. Gilmore should not have been able or not been required to have to defend in that situation when it was not properly brought to the agency head in the first place. Ms. McCorvey not having legal authority to even draft specifications or even to conference with her, Ms. Gilmore, or to do anything. And, in fact, the specification itself, I think a number of them talked about on multiple occasions between one period and September, you did this, that, and the other. Ms. McCorvey's acting role ended in mid-July. It's not even clear from the specifications how much of what she's talking about occurred after that July termination of her acting role and the October 13th removal decision. That's not even clear, period. Mr. Williams, you're into rebuttal time. You want to save some time? Yes, sir. Thank you very much, Mr. McNamara. May it please the Court, to address the first issue of whether the Board considered this issue concerning Ms. McCorvey's authority, the Board did consider that issue. It's on page 11 of the Joint Appendix, page 11 of the Board's decision. The Board decided this issue in the footnote there, footnote number 9, and concluded a couple of things. First, that the harmful error analysis applies to this argument, just like it applies to all of Ms. Gilmore's other procedural error arguments. And that it hadn't shown that it would likely affect the outcome. Had not, in fact, even alleged that this procedural error would affect the outcome. Okay, now let me tell you what my problem is, okay? In Cornelius v. Nutt, the Supreme Court approved the Board's harmless error standard. But after Cornelius, the harmless error standard was changed in a material way, which seems to me perhaps inconsistent with the notion of harmless error. One of the standards approved in Cornelius was whether the error might have caused the agency to reach a conclusion different. After Cornelius, it was amended to say that you'd have to show that it would likely to cause the agency to reach a different result. That second standard seems to be directly inconsistent with the harmless error standard in the judicial context, which is the standard that was approved in Cornelius. Could you tell me how it is possible that the standard that the Board has now applied is a lawful standard that's consistent with the statute? The statute, we didn't consider that issue specifically in the briefs. And if my response isn't sufficient, then certainly we can provide supplemental proof on that. I did notice that the regulation had changed from the time— In a big way, right? I don't know that you would say in a big way. As you pointed out, it changed from might to would likely. I'm not sure how significant that change was. I think under both standards, it's still the employee's burden to prove by preponderance of the evidence. Well, sure. But the problem is that the Board here applied the would standard rather than the might standard. And if it applied the wrong standard for harmless error, no, we have to send the case back to be adjudicated under the correct harmless error standard. The Board applied here the standard that is contained in the regulation. The would standard. The would standard. Right. So if they're wrong, if that's the wrong standard, no, we have to send it back to the Board to apply the correct standard. If the correct standard is the earlier standard, that is the might standard, then we have to send it back. That would require the Court to invalidate the regulation. Yes. That regulation is entitled to deference.  Well, it's entitled to deference if it's a permissible construction of the statute. The problem is that in Cornelius, the Supreme Court said we read the statute as adopting the judicial standard for harmless error. The Board has now departed from the judicial standard for harmless error. It has put in a much more stringent standard than existed before, a much more stringent standard than is applied in the courts, and a much more stringent standard than was approved in Cornelius. If you're looking at Cornelius, it's footnote 9. The Court is saying, not really holding, but simply saying in dicta that it would be natural to assume that Congress intended the term harmful error. Could you read the citation in the appendix? I'm sorry, Your Honor, we're looking at the Cornelius case. It's not in the appendix. It's footnote 9 in the Cornelius case. On page 7 of the Cornelius case. I'm not sure that the characterization that the Board's regulation is much more stringent than the judicial version of harmful error is correct. The formulation that's here is error that has some likelihood of affecting the result of the proceeding, and the Board's regulation… I'm not sure that that's really the case, that it's all that difficult to satisfy. But certainly, in the context of this case, if the regulation is impermissible, this is not the case in which to hold that it is impermissible. Because Ms. Gilmore never even alleged that any of the errors here were harmful. So the standard was never really applied. You don't need to apply the standard, because you don't even get there. If you don't have an allegation of harmful error, then what does it matter whether it's likely or not likely? She offered no evidence at all, whether it's a preponderance standard or however we construe the regulation. She offered no evidence at all. But don't the errors themselves sort of suggest whether it would be harmful or not? I mean, I'm not understanding why she has to put in evidence other than the existence of the errors. In my experience, the application of the harmless error standard is you sort of look at the record, you look at the errors, and you make a judgment as to whether they might have led to a different result. There's no extraneous evidence that's brought in on the harmful error question, generally. That would not be consistent with this Court's precedents, particularly in Handy and in Chaney. In Chaney, the Court explicitly said, as we quote in our brief, that the Court is not required to conjure up reasons why an error is harmful. In Handy, the Court explicitly rejected a – what you're essentially suggesting, Your Honor, is that a statutory error is per se harmful. No, no, no, no. That's not what I'm suggesting. I'm suggesting that the test as to whether it's harmful or not is whether it might have led to a different result, not whether it would have. Even if that is the test, that is essentially then – it's a hypothetical test. It's simply is it possible, might it have – this Court specifically in Handy said that's not the analysis. And I – unless I'm mistaken, I think that was Handy that was interpreting the old regulation. The Court said that's not what we do. And in the larger context of the Civil Service Reform Act here, where Congress – the purpose of the Civil Service Reform Act is to alleviate the problems of the federal government not being able to take adverse actions against employees because of all of these technicalities, Congress said we're trying to make – we're trying to let the government be more efficient and effective in taking adverse actions. Well, clearly so. It's importing a harmless error standard for the first time. The question is what is the harmless error standard? I don't understand that our prior cases have addressed that question, whether it's might or would. We haven't addressed the question of whether the revision in the regulation is a lawful change to the regulation, right? I don't know the answer to that question because it wasn't presented in this case. So I'm not sure. And again, if the Court would like us to, we can certainly submit supplemental briefing on that. But again, I don't think this is the case to make that decision. Well, isn't the particular issue incorporated in issue number two raised by Ms. Gilmour? I mean, the issue there was the final decision of the MSPB that the agency's decision to reduce petitioner's grade was based upon procedural error unsupported by substantial evidence. Isn't that broad enough to cover a harmful error? Yes, but the— You're saying it's not before us because it was not argued, but isn't that particular issue covered by the second issue raised by the petitioner? Yes, certainly. Harmful error is certainly an issue in this case. That's not what I'm saying. The issue, though, is that Ms. Gilmour did not even allege that any of the errors committed here in any way harmed her. No matter what standard you apply, whether it's the one that's in Cornelius or the current one in the current regulation, you have to at least allege that there's harm. Well, she seems to be arguing that. She's arguing that. She argues that in a very, very broad way in this court, saying that there were all of these—essentially there were all of these errors here and it harmed me somehow. But she does not say, as the board pointed out, how any—specifically, what she would have said differently, what she would have done differently had the— or in particular, how any of the errors committed by the agency harmed her. If she had had the full time to respond, for example, she didn't allege—she would have made a response. She would have said X, Y, and Z, and it would have made a difference. She didn't make—she just simply did not make that allegation. I think maybe it would be worthwhile to request additional briefing on the issue. Why don't we have simultaneous briefs filed by both parties, no longer than 12 pages, and try to submit them within 15 days? We did touch on that issue in our brief. No, but we talked about it, but it's not really covered specifically, the specificity dealing with the regulations in Cornelius. You don't want to avoid supplemental briefing. You want to brief this. I think supplemental briefing would be helpful for the court as well as the parties. Okay, Your Honor. Then we have nothing further. We'll submit the briefs. Thank you. Let's try to get them in within 15 days from today. Thank you very much. Thank you. The case is submitted on that basis, and we'll await the supplemental briefing. Will there be further argument, or— No, we'll just decide it on the submitted briefs. Okay. Thank you very much. Thank you. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m. The Court is adjourned. The Court is adjourned. The Court is adjourned.